**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**REGINALD McCRAY,**

      **Petitioner,**

**vs.**

                                       **CASE NO. 4:09cv426-RH/WCS**

**KENNETH S. TUCKER, Secretary,
Florida Department of Corrections,[1]**

      **Respondent.**

_____/


## REPORT AND RECOMMENDATION

This is a petition for writ of habeas corpus filed by Reginald McCray pursuant to

28 U.S.C. § 2254.  Doc. 1.  Petitioner challenges his convictions for burglary with a

person assaulted (count I) and aggravated battery with great bodily harm (count II),

_____

      [1] On August 24, 2011, Kenneth S. Tucker succeeded Edwin G. Buss as the Secretary of the Florida Department of Corrections, and is automatically substituted as Respondent.  Fed.R.Civ.P. 25(d).

case number 2002 CFA 69, in the Circuit Court of the Second Judicial Circuit, in and for Gadsden County, Florida.  *Id.*  Petitioner was sentenced to life in prison on count I as a prison releasee offender, and to 15 years on count II.  *Id.*; doc. 29, p. 2.

Respondent filed an answer and the record in paper form.  Doc. 29.  References herein to exhibits are to the record in paper form.  Petitioner did not file a traverse. Respondent agrees that the petition was timely filed.  Doc. 29, pp. 6-7.

**Section 2254 Standard of Review**

The court may grant federal habeas corpus relief to "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A state prisoner must first properly present all federal claims in state court.  § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999).

**Trial evidence as set forth in Petitioner's *Anders* brief on appeal**

Jesse McCray, Petitioner's cousin, testified that he was at a party at Petitioner's home on December 24, 2001, and he left with Patricia Duncan and went to his own residence.  Ex. F, p. 4.  He said that he and Duncan "sat alone in the front room" while others slept elsewhere in the residence.  *Id.*  At 3:00 a.m., December 25, 2001, Petitioner and his cousin, Brenda Lamb, came to the door.  *Id.*  Brenda Lamb did not testify.  Petitioner entered the home carrying a broken wooden bat.  *Id.*  Duncan rant into a bathroom and locked the door.  *Id.*  Petitioner repeatedly hit Jesse McCray, breaking his arm and hand.  *Id.*

Betty Murray, Petitioner's cousin, testified that she was in a back bedroom during this assault.  *Id.*, p. 5.  She saw Petitioner standing on the front porch with a baseball bat in his hand.  *Id.*  Duncan was locked in the bathroom.  *Id.*  Murray locked the front door, and Petitioner broke windows around the residence.  *Id.*

Deputy Hubman testified that after he arrived on the scene, Duncan told him that Petitioner had swung the bat to hit her, that Jesse McCray got between her and Petitioner to protect her, and that Petitioner hit Jesse McCray with the bat.  *Id.*, p. 6.

Patricia Duncan testified that she had dated Petitioner.  *Id.*  She said she was sleeping at Petitioner's house when a "commotion" began and Jesse McCray told her to go to his mother's house.  *Id.*  She said that she and Jesse McCray went to that house, and she went to sleep.  *Id.*  She said that Petitioner knocked on the door before entering, "was nice and not carrying anything," that Jesse McCray repeatedly told Petitioner to leave, she went into a bathroom, and heard another commotion.  *Id.*

Petitioner testified that he went to the home of Jesse McCray to speak to Duncan "about their relationship."  *Id.*, p. 7.  He admitted he had been drinking  beer.  *Id.*  Petitioner said he picked up a curtain rod from the porch.  *Id.*  Petitioner said that inside the home, McCray pushed him, and Petitioner held McCray down on the couch with the curtain rod to prevent him from attacking him.  *Id.*  He said that McCray's father then jumped on him.  *Id.*  Petitioner admitted he broke windows.  *Id.*

**Legal analysis**

Petitioner brings one claim to this court.  He contends that he should be afforded a new trial due to new evidence.[2]  Doc. 1, pp. 5, 9.  The new evidence is that Jesse McCray and Brenda Lamb have recanted their trial testimony.  *Id.*, p. 5.  Petitioner contends that the Rule 3.850 court failed to afford a fair hearing because it determined the issue on the affidavits of McCray and Lamb, without holding an evidentiary hearing.  *Id.*, p. 7.

Jesse McCray stated in his affidavit, dated November 12, 2003, that he received "several-severe-bruises from a fist fight" with Petitioner.  Ex. M (Rule 3.850 motion), R. 22.  He said that Petitioner knocked on the door and when Petitioner came in, Petitioner saw McCray and Duncan lying on a sofa.  *Id.*  He implied that Petitioner was always welcome in his home.  *Id.*  Jesse McCray said that Duncan jumped up, ran into the bathroom, Petitioner said "What's going on here?", and McCray said he charged Petitioner as Petitioner backed to the front door.  *Id.*  McCray said he swung his fist twice at Petitioner, missed twice, and on the second swing hit the door, breaking his hand.  *Id.*  He said that Petitioner then used a baseball bat to break windows on the front porch.  *Id.*

Brenda Lamb said she, Quanda Dilworth, and Petitioner drove to Betty Murray's home.  *Id.*, R. 23.  She stated that she knocked on the door, and the door was opened

---

[2] Petitioner has worded his claim as a challenge to the state court's denial of this claim as presented in his Rule 3.850 motion.  Doc. 1, p. 4.  I read the claim as did the Respondent, to reach the federal new evidence claim presented.  I also read the claim as a new evidence claim, and not a claim of ineffectiveness of counsel.

by Duncan.  *Id.*  She said as she and Petitioner entered, Duncan and Jesse McCray

were lying on the sofa in the front family room.  *Id.*  She did not explain how Duncan

went so rapidly from the door to lying with McCray.  Duncan was married to someone

other than Petitioner or McCray.  *Id.*  Lamb's description of what happened next is

essentially identical to the description by McCray set forth above.  *Id.*

The new evidence claim is really a claim of actual innocence.  "Claims of actual

innocence based on newly discovered evidence have never been held to state a ground

for federal habeas relief absent an independent constitutional violation occurring in the

underlying state criminal proceeding."  Herrera v. Collins, 506 U.S. 390, 400, 113 S.Ct.

853, 860, 122 L.Ed.2d 203 (1993) (citation omitted).[3]  Rather, "a claim of 'actual

innocence' is not itself a constitutional claim, but instead a gateway through which a

habeas petitioner must pass to have his otherwise barred constitutional claim

considered on the merits."  *Id.*, at 404, 113 S.Ct. at 862; Jordan v. Secretary, Dep't of

Corrections, 485 F.3d 1351, 1356 (11th Cir.), *cert. denied*, 552 U.S. 979 (2007)

(citations omitted); Cunningham v. Dist. Att'y's Office for Escambia County, 592 F.3d

1237, 1272 (11th Cir. 2010) (citing Jordan, other citations omitted).  *See*, Schlup v.

Delo, 513 U.S. 298, 313-317, 115 S.Ct. 851, 860-862 130 L.Ed.2d 808 (1995)

---

[3] In Herrera, it was assumed, without deciding, that "in a capital case a truly
persuasive demonstration of 'actual innocence' made after trial would render the
execution of a defendant unconstitutional, and warrant federal habeas relief if there
were no state avenue open to process such a claim."  *Id.*, at 417, 113 S.Ct. at 853. See
also House v. Bell, 547 U.S. 518, 554-555, 126 S.Ct. 2064, 2086-87, 165 L.Ed.2d 1
(2006) (quoting this language, finding no need to decide the unresolved issue, House
had satisfied the actual innocence showing as a gateway to review of a defaulted claim,
but "whatever burden a hypothetical freestanding innocence claim would require, this
petitioner has not satisfied it.").

(distinguishing Herrera, as Petitioner Schlup's claim of actual innocence was not itself

the constitutional claim, but asserted as a gateway to review of his defaulted

constitutional claims);  House v. Bell, 547 U.S. 518, 537-539, 126 S.Ct. 2064, 2077-78,

165 L.Ed.2d 1 (2006) (explaining that actual innocence is a gateway for review of

defaulted constitutional claims; it is not to be confused with the standard for sufficiency

of evidence, as an actual innocence claim involved evidence the jury did not have

before it).

It appears that Petitioner seeks to plead an independent constitutional flaw in the

state proceedings by alleging that he was denied due process when the Rule 3.850

court denied his motion without an evidentiary hearing.  Such a claim, however, must

fail.  A defect in a collateral proceeding is unrelated to the cause of detention, and does

not state a claim for habeas corpus relief.  Quince v. Crosby, 360 F.3d 1259, 1261-62

(11th Cir. 2004),[4] cert. denied, 543 U.S. 960 (2004); Spradley v. Dugger, 825 F.2d

1566, 1568 (11th Cir. 1987) ("We have held the state court's failure to hold an

evidentiary hearing on a petitioner's 3.850 motion is not a basis for federal habeas

relief.").  See also In re Rutherford, 437 F.3d 1125, 1127 (11th Cir. 2006) (citing Quince

and Spradley); Anderson v. Secretary for Dept. of Corrections, 462 F.3d 1319, 1330

(11th Cir. 2006), cert. denied, 549 U.S. 1216 (2007) (citing Spradley).

Consequently, the petition fails to allege a violation of the federal constitution.  It

should be denied with prejudice.

---

[4] Such an argument could be relevant to whether the presumption of correctness
should apply to the state court proceedings, however.  Quince, 360 F.3d at 1262 and n.
3 (citations and footnote omitted) (noting that no such argument had been raised there).

**Certificate of Appealability**

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that petition for writ of habeas corpus filed by Reginald McCray pursuant to 28 U.S.C. § 2254, challenging his convictions for burglary with a person assaulted (count I) and aggravated battery with great bodily harm (count II), case number 2002 CFA 69, in the Circuit Court of the Second Judicial Circuit, in and

for Gadsden County, Florida, be **DENIED WITH PREJUDICE**, and that a certificate of

appealability be **DENIED** pursuant to § 2254 Rule 11(a).

      **IN CHAMBERS** at Tallahassee, Florida, on March 7, 2012.

                    <u>s/   William C. Sherrill, Jr.</u>
                    **WILLIAM C. SHERRILL, JR.**
                    **UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

      **A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**